LOBRANO, Judge.
Plaintiff, Cynthia Ledet Ratcliff, appeals the dismissal of Deonne DuBarry in her suit for damages filed against Earl M.J. Boydell, Jr. and Deonne DuBarry d/b/a DuBarry and Boydell, and DuBarry and Boydell, a Professional Law Corporation. DuBarry was dismissed on a motion for summary judgment. We determine the following factual scenario from the record before us.[1]
On June 2, 1984, Ratcliff’s husband, and father of her minor son, John Quitmann Ratcliff, Jr., was killed in an automobile accident in Plaquemines Parish.
On September 28, 1984, Ratcliff, on behalf of herself and her minor son, via a written agreement, employed and retained the legal services of “Deonne DuBarry and Earl M.J. Boydell, Jr. d/b/a DuBarry and Boydell and all associates, as client’s attorneys to investigate, prosecute and collect, whether by suit, compromise or otherwise, client’s claim arising out of the accident which occurred on June 27, 1984”. This agreement provided the following as attorneys’ fees:
“If claim is based on third party tort liability and/or negligence: I assign and transfer THIRTY-THREE and ONE-THIRD (33⅛) percent of my claim of which amount is received in settlement of the matter to my above named attorneys. It is understood that should my attorneys find it necessary to file a suit on my behalf in order to enforce recovery of my damages, that I assign FORTY (40%) percent of my claim for their services. If appealed, FORTY-FIVE (45%) percent of the claim.”
Suit was filed on behalf of Ratcliff and her son, and after four days of trial, the following settlement was reached:
1) $225,000.00 in cash to be paid immediately,
2) Future periodic payments of $1,000.00 per month for life, calculated on the lifetime of John Q. Ratcliff, Jr., 25 years guaranteed, deferred 15 years, to begin on January 1, 2001;
3) Future lump sum payments of $25,-000.00 to be paid on 1/1/2006; $40,000.00 on 1/1/2011; $60,000.00 on 1/1/2016; $90,000.00 on 1/1/2021; $120,000.00 on 1/1/2026; $200,000.00 on 1/1/2031 and $300,000.00 on 1/1/2036.
From the $225,000.00 cash settlement, $152,217.50 was retained a attorneys’ fees. This amount represents 40% of $225,000.00 or $90,000.00 plus; $15,815.01 in costs, plus *539 $46,402.49 as 40% of the present day value of the deferred annuity settlement.
In her suit for damages, Ratcliff alleges that the present day value of the annuity settlement is $44,900.00, not the $112,-500.00 alleged by DuBarry and Boydell. Ratcliff calculates 40% of $44,900.00 to be $17,960.00, not the $46,402.49 retained by DuBarry and Boydell. Thus, Ratcliff asserts she is entitled to $28,442.49, the difference between what was charged and what was properly due.[2]
DuBarry filed a peremptory exception of “No Cause of Action after Discovery” in which she alleges she had “very little, if any, connection” with Ratcliff. DuBarry argued that she did no legal work on the wrongful death action except to appear on the day of trial, which was the first time she met Ratcliff. In opposition to this exception, Ratcliff asserted that DuBarry was a party to the contingency fee agreement, participated in discovery, appeared at trial and personally received $34,100.62 in attorneys’ fees from the settlement. The exception was denied.
DuBarry then filed a Motion for Summary Judgment. In her supporting affidavit, she alleges again that she had nothing whatsoever to do with Ratcliffs case. The trial judge granted the motion for summary judgment. It is from this motion that Ratcliff appeals.
Summary judgment is appropriate when there is no genuine issue of material fact and mover is entitled to judgment as a matter of law. La.C.C.Pro. Art. 966. It is designed to dispose of frivolous demands and defenses. Schaefer v. Lynch, 406 So.2d 185 (La.1981). “The real test for the validity of a summary judgment is whether there is any factual issue to go to the trier of fact ...” Strickland v. Board of Supervisors of Louisiana State University, 432 So.2d 964 (La.App. 4th Cir.1983), citing, Pellegal v. Dureau, 427 So.2d 55 (La.App. 4th Cir.1983).
The party moving for a summary judgment has the burden of showing there is no issue of fact, and all doubt and inferences will be resolved in favor of the party opposing the motion. Mashburn v. Collin, 355 So.2d 879 (La.1977). The motion may be supported or opposed by affidavits, interrogatories, and depositions. However, the adverse party cannot merely rely on the allegations or denials in her pleadings. La. C.C.Pro. Arts. 966, 967.
A motion for summary judgment is not to be used as a substitute for a trial on the merits. In determining whether all material issues of fact have been disposed of, the trial court is obligated to resolve any doubt against the granting of summary judgment. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980).
In her supporting affidavit, DuBarry states:
“I, Deonne DuBarry had absolutely nothing to do with the initial interview, preparation, or connection with Cynthia Ledet Ratcliff at any time whatsoever during the entire lawsuit, which was against American Motors Corporation.
In fact, not only had I never spoken or seen Cynthia Ledet Ratcliff prior to the date she went to trial, but I had absolutely no information about either herself or her case.”
In opposition, Ratcliff presented DuBar-ry’s deposition testimony that was in direct conflict with her affidavit. DuBarry testified as follows:
“Q. Okay. What was the work that you performed?
A. Actual work, I heard on and off various things that were going on. Okay? And it was tossed about the office as far as a particular case.
Actual work that I performed was approximately in September prior to the trial where I went with Barbara to Detroit for a deposition with GMAC or AMC. And then I was present and participated in the selection of the jury and the negotiation and the discussion with Cindy specifically concerning the settle *540 ment up until the jury was selected and we — which was the night before Barbara and Mr. Boydell went to Pointe A La Hache to do the actual settlement.”
* * * * * *
“Q. Did you participate in any discussions with the judge—
A. Yes, I did.
Q. —and Miss Ratcliff?
A. Yes, I did.
Q. And those took place on the day before the actual settlement was confect-ed?
A. I took part in all of the discussions of settlement between the attorneys, and the judge, between Mr. Boydell, myself, and Miss Ratcliff personally.
Q. Miss Ratcliff?
A. Un-huh (indicating affirmatively). And between Miss Ratcliff and the attorneys and the judge. Every settlement discussion that was had prior to the night that we went home after picking the jury I took part in.”
* * * * * *
“Q. Were you ever present when Miss Ratcliff asked any questions about attorney’s fees?
A. As I said, Mr. Boydell and I specifically had a conference with Miss Ratcliff where we went over everything in depth, including attorney’s fees, including costs, a total breakdown based on the figure that she was going to settle for. Okay? And she — There was no problem at all. And from there we went into the judge’s chambers with it, you know. She agreed upon that. Then we all went into the judge’s chambers and the judge wanted to be very, very sure that she understood everything fully, because he wanted to protect her interests fully and he wanted to impress upon her that he thought she should settle and take this particular plan because it was in her and her child’s best interest, and he wanted to impress upon her that he thought that she had done very, very well, because he was a little afraid, not knowing the situation, that she might press it to trial and end up getting nothing.”
# * * * # *
“Q. Okay. Did you receive a part of the fee in this matter?
A. Yes, I did.
Q. What portion of the fee did you receive?
A. I would say 25 percent.”
It is obvious that DuBarry’s deposition is suggestive of much more participation in Ratcliff’s case than her supporting affidavit indicates. Further, there is a clear factual conflict as to each side’s interpretation of the present value of the annuity. In brief, Ratcliff claims it is worth $49,465.00 and DuBarry alleges it is worth $112,-000.00. There is no evidence to substantiate either figure.
In addition to these disputed material facts, there are also issues of law that must be resolved. The contingency fee contract is between Ratcliff and “Deonne DuBarry and Earl M.J. Boydell, Jr., d/b/a DuBarry and Boydell.” When the agreement was executed DuBarry and Boydell were operating as an ordinary partnership, each with a 50% interest. Thus, if there is a breach of the contingency contract, (i.e. the wrong fee collected) then the legal issue is whether the partnership is liable, or the subsequent “DuBarry & Boydell, A Professional Law Corporation.” Since a partner is responsible for his virile share of partnership debts, La.C.C. Art. 2817, there must be a determination if the partnership is responsible for an alleged breach. And if the partnership is liable, the partners may also be liable.
These issues must be decided by a trial on the merits. The evidence in support/opposition to the summary judgment simply cannot resolve these issues.
Accordingly, for the foregoing reasons, the summary judgment is reversed, and the matter is remanded.
REVERSED AND REMANDED.

. Our review of the record shows that the documentation supporting the summary judgment in this matter was not included. However, copies were annexed to the briefs filed by the parties. and to exceptions filed at the trial level. During oral argument counsel agreed that these were correct copies of the missing exhibits.

. In addition to this sum, Ratcliff alleges damages for mental anguish and attorneys’ fees in the amount of $75,000.00.