ATTORNEY DISCIPLINARY PROCEEDINGS
1,PER CURIAM. *
This attorney disciplinary proceeding arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Earl Boydell, Jr., an attorney licensed to practice law in the State of Louisiana.
UNDERLYING FACTS
In September 1984, Cynthia Ratcliff retained the law firm of DuBarry and Boy-dell [1] to represent her in a wrongful death and survival action arising out of the death of her husband. The firm filed suit on behalf of Mrs. Ratcliff and her two-year-old son in October 1984. The case was set for trial in October 1985, but during jury selection, the parties agreed to settle the matter. The settlement consisted of an immediate cash payment to Mrs. Ratcliff (the “cash portion”), in addition to a deferred portion which was placed into an annuity (the “structured portion”) for the benefit of herself and her son.
Because the firm had not previously handled a settlement structured in this fashion, respondent was unsure how to calculate the 40% contingency fee due the | ¿firm under its agreement with Mrs. Rat-cliff.[2] However, during settlement negotiations, counsel for one of the defendants told respondent that the fee was properly based upon the present-day value of the structured portion, and that an expert qualified to compute present-day values, such as an economist, an actuary, or a structured settlement broker, should be consulted. Respondent did not heed this advice, but instead telephoned his CPA to discuss the value of the settlement. The CPA advised respondent that without knowing either the applicable interest rate or the cost of the annuity, he could only calculate a range of present-day values based upon various interest rates. Respondent selected a number in the middle of the range, $112,500, upon which to calculate the attorney’s fees on the structured portion. Respondent asserts that Mrs. Ratcliff agreed to this method of calculating the attorney’s fees, but she denied any such agreement. Nevertheless, what is clear is that respondent did not consult an economist, an actuary, or a structured settlement broker — either before or at any time after the settlement was confected— to determine the actual value of the deferred payments.
Respondent disbursed the settlement funds to Mrs. Ratcliff at a November 5, 1985 meeting. At that time, respondent deducted attorney’s fees of $90,000 and costs of $17,217.50 from the cash portion.[3] *328 He also deducted an additional $45,000 in attorney’s fees which -he charged on the structured portion, based upon his representation that the annuity had a present-day value of $112,500. However, it was later revealed. that the actual cost of the annuity was only $49,465, and a 40% attorney’s fee on the structured portion should have been less than $20,000.
| sThere is some question whether Mrs. Ratcliff expressed any reservations about respondent’s calculations during the November 5, 1985 meeting. According to Mrs. Ratcliff, she had not felt comfortable with respondent during the representation and asked if she could take some time to review his figures, particularly the calculation of the attorney’s fees on the structured portion. Respondent accused her of not trusting him, and in tears, she ultimately backed down and took the settlement check. By contrast, respondent testified that Mrs. Ratcliff never expressed any concern about the attorney’s fees and “happily” left the November meeting with a check for $72,782.50, her net share of the cash portion of the settlement. The same day, the firm’s share of the settlement was paid to respondent, Ms. DuBarry, and Barbara Arnold, the associate who referred the case to the firm. Mrs. Ratcliff deposited her check into her checking account three days later.
On November 21, 1985, Mrs. Ratcliff wrote to respondent, stating she was “unclear” on the fee assessment and requesting “a written explanation of the calculations that you used to determine” the present-day value of the annuity, “or the name of the financial expert who provided you with this value....” On November 22, 1985, respondent sent a letter in reply, stating “[o]ur estimate of present day value was based on information from both attorneys and accountants, all of whom were quite familiar with structured settlements,” and indicating “[o]ur estimation was as accurate as one can get, and you willingly accepted it.”
Mrs. Ratcliff subsequently retained a new attorney, Dawn Barrios, who sought to obtain a refund from respondent of more than $25,000 in attorney’s fees charged on the structured portion. In a January 29, 1986 letter to respondent, Ms. Barrios included a report from an economist, Dr. Melville Wolfson, who estimated that the cost of Mrs. Ratcliff s annuity was $44,900. Based on Dr. Wolfson’s report, Ms. RBarrios asked respondent “to refund to my client, Cynthia Ratcliff, the difference between the attorneys’ fees retained on the structured settlement and those your firm is entitled to.”
Faced with this demand, respondent sent a March 12, 1986 letter directly to Mrs. Ratcliff. He informed her that because she had “decided to look ‘a gift-horse in the mouth’ ” by retaining new counsel, the firm was billing her $14,244 for legal services performed incident to the wrongful death suit.[4] Respondent informed Mrs. Ratcliff that if the firm did not receive prompt payment of the invoice, “we will return in kind a suit against you to recover unpaid fees for services rendered.”
On June 23, 1986, Mrs. Ratcliff, through her attorney, Dawn Barrios, filed suit against respondent, Ms. DuBarry, and the law firm to recover, the disputed attorney’s fees. Cynthia Ledet Ratcliff, et al. v. Earl M.J. Boydell, Jr. and Deonne DuBarry d/b/a DuBarry & Boydell, and DuBarry & Boydell, APLC, No. 86-11313 c/w 86-15175, 86-19056, and 90-2303 on the docket of the Civil District Court for the Parish of Orleans. Over the next several years, respondent filed numerous reconventional demands, motions and other pleadings against Ms. Barrios and Mrs. Ratcliff.[5]
*329 Mrs. Ratcliff ultimately prevailed in her suit, and on June 5, 1992, the- district court awarded her $25,214 in disputed attorney’s fees. Most significantly, the district court also awarded Mrs. Ratcliff sanctions against respondent and Ms. DuBarry in the amount of $43,000 for abuse of process, $12,000 for unethical practices, fraud and | [¡conversion, and $18,000 for intentional infliction of emotional distress. In discussing the latter claim, the district court stated:
Considering the foregoing law in light of the facts of this case, the court finds that plaintiff has sustained her burden of proving an intentional tort by defendants. It is further felt that DuBarry and Boydell’s vindictive, obstreperous, and dilatory tactics over the six year course of this litigation amounted to nothing short of extreme and outrageous conduct against this plaintiff. They launched a counterattack against Rat-cliff and Barrios by filing million dollar defamation suits against plaintiff, her attorney, and her attorney’s husband. Over the course, of this self-protracted litigation, DuBarry and Boydell admittedly falsely sued Ratcliff for additional attorneys’ fees not owed; they, without due diligence, used a private process server calculated to intentionally upset plaintiff by serving her at home and work rather than through her attorney of record; they obstinately refused to answer Ratcliffs petition, in an áttempt to wear her down, for nearly three and one half (3íé) years and then took a devolutive appeal from a court order to answer; and they frivolously filed motions, exceptions, third-party and reeon-ventional demands (for many of which article 863 sanctions were awarded), de-volutive appeals, unwarranted requests to stay proceedings, and other delaying requests too numerous to state.
When one considers the fact that none of defendants’ counter-actions were found to be meritorious, or were based upon informed advice of competent experts or counsel, such vile conduct is indeed so extreme or outrageous as to go beyond all possible bounds of decency and to be regarded as utterly intolerable in a civilized community. The long history of intimidating tactics, multitudinous pleadings, and unwarranted delays reveal a clear and convincing pattern of deliberate, repeated harassment over a period in excess of six years. These extreme actions obviate any bona fide legal privilege . DuBarry and Boydell may have enjoyed.... [T]he evidence is uncon-troverted that plaintiff was particularly susceptible to emotional distress and that DuBarry and Boydell had knowledge of such ..susceptibility. Furthermore, by his own admission, Earl Boy-dell indicated that he intended to cause plaintiff some degree of distress. When viewed in its totality, this court finds that DuBarry and Boydell’s conduct amounted to more than a lesser degree of fright, humiliation, embarrassment or worry. Their conduct can only be classified as extreme and ^outrageous conduct intended or calculated to cause Rat-cliff severe emotional distress.
The district court’s judgment was affirmed on appeal. Ratcliff v. Boydell, 93-0362 (La.App. 4th Cir.4/3/96), 674 So.2d 272. Thereafter, Ms. DuBarry paid Mrs. Rat-cliff $185,000 and obtained a release from her. Respondent paid the remainder of the judgment[6] and signed a promissory note to Ms. DuBarry for half of the amount she paid:
*330 DISCIPLINARY PROCEEDINGS
In June 1992, Mrs. Ratcliff filed a complaint against respondent with the ODC. After conducting an investigation, the ODC filed one count of formal charges, alleging that respondent’s conduct in connection with the fee dispute and subsequent litigation violated numerous provisions of the Code of Professional Responsibility, including DR 7-102(A) (engaging in harassing or malicious actions) and DR 9-102 (failing to preserve and identify client property).[7] Respondent filed an answer to the formal charges, and the matter was set for a formal hearing before the hearing committee.

Hearing Committee Recommendation

After considering the witness testimony and documentary evidence, the hearing committee determined that respondent erred in his calculation of attorney’s fees on the structured portion of the tort settlement. Because respondent’s firm had nev-erjjhandled a structured settlement in the past, the committee pointed out that it was incumbent upon respondent to seek competent assistance in determining how the annuity should be valued.
As to the charge that respondent failed to segregate the disputed fee, a majority of the committee concluded that sufficient evidence was not presented at the hearing to find that Mrs. Ratcliff objected to the calculation of respondent’s fee at the time the settlement funds were disbursed on November 5, 1985. Because respondent was unaware of a dispute at that time, he had no obligation to place the “disputed” funds in trust.
Finally, the committee found that respondent’s behavior in the civil litigation was clearly intended to harass and intimidate Mrs. Ratcliff to such an extent that she would drop her suit. His claims were found to be without merit and only served to cause unnecessary delay and to increase the cost of the litigation; as “flagrant examples,” the committee cited respondent’s suit for payment of legal fees for incidental services and the defamation and malicious prosecution claims.
Turning to the issue of the appropriate sanction for respondent’s misconduct, the committee suggested that either disbarment or suspension may be warranted under the ABA’s Standards for Imposing Lawyer Sanctions, depending upon whether respondent’s conduct was intentional, knowing, or negligent. As a mitigating factor, the committee acknowledged that respondent has no prior disciplinary record, and found that respondent exhibited remorse for his conduct. Under the circumstances, the majority of the committee recommended that respondent be suspended from the practice of law for three years.
| sDisciplinary Board Recommendation
The disciplinary board generally adopted the hearing committee’s report. First, the board agreed that insufficient evidence was presented to support a finding that Mrs. Ratcliff questioned the calculation of respondent’s fee at the time of the settlement conference. Because respondent could not have been aware of a fee dispute that day, he was not obligated to put the funds in trust. Accordingly, the board concluded that respondent did not violate DR 9-102 and did not commingle or convert client funds.
However, the board did note that when respondent received the economist’s report in January 1986 which demonstrated that his fee was clearly improper, he was obligated at that point to return the unearned portion of his fee. The board found that by failing to do so, respondent violated DR 9-102(B)(4), which requires a prompt return of client funds.
Turning to the appropriate sanction for respondent’s misconduct, the board found that respondent violated duties owed to his *331 client, the public, and the legal system. The board noted that respondent’s actions were knowing and intentional, and caused a great amount of actual injury. ’ In particular, the board found that because respondent failed to return the unearned fee at issue for at least eleven years, Mrs. Rat-cliff had to endure years of litigation over the fee. She was also made a defendant in meritless, harassing lawsuits filed by respondent. The board determined that the only mitigating factor present is no prior discipline.
The board pointed out that it had been unable to find any prior case dealing with “such egregious conduct.” At first glance, however, the board felt that disbarment was appropriate under Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), given that respondent clearly acted in bad faith, intended a result | ^inconsistent with his client’s interest, caused great expense and inconvenience to Mrs. Ratcliff, and did not make restitution until a judgment was rendered against him. Nevertheless, after considering the ODC’s recommendation, the ABA’s Standards for Imposing Lawyer Sanctions, and the mitigating factor of no prior discipline, the board concluded that the three-year suspension recommended by the majority of the hearing committee is appropriate. The board also recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of this court’s judgment until paid.
Both respondent and the ODC filed objections in this court to the disciplinary board’s recommendation, and the matter was set on the court’s docket for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
The record supports the findings of fact made by the majority of the hearing committee. While there is conflicting testimony regarding whether Mrs. Ratcliff questioned respondent’s fee calculations at the November 5, 1985 meeting, the committee made a factual finding that respondent was not aware there was a fee dispute at that time. We are unable say this factual finding is clearly wrong. Accordingly, we agree that respondent’s failure to segregate the disputed portion of the fee at this time does not constitute commingling or conversion in violation of DR 9-102.
Nonetheless, the record reveals that by January 1986, respondent received information from an economist which clearly called his fee calculation into question and indicated the fee he charged, was higher than he was entitled to receive. At that |inpoint, respondent had an obligation under DR 9 — 102(B)(4) to promptly refund the unearned portion of the fee to his client. Respondent instead engaged in nearly ten years of lengthy and protracted litigation over the fee.
Indeed, the most disturbing aspect of this case is the nature of the litigation fomented by respondent against his former client. In imposing sanctions against respondent in the underlying litigation, the district court concluded respondent’s actions “can only be classified as extreme and outrageous conduct intended or calculated to cause Ratcliff severe emotional distress.” The district court’s findings in this regard are unquestionably supported by the voluminous transcript of the district court proceedings which were introduced into the record of this disciplinary matter.
Respondent attempts to justify his conduct in the underlying litigation on the ground that he was acting in “self defense” in response to the aggressive tactics of his opposing counsel. We find little support for this defense in the record. However, even assuming respondent was seeking to “defend his honor,” as he suggests, the fact remains that he is subject to a professional obligation to refrain from engaging in harassing or malicious litigation. Respondent’s actions caused actual and sub *332 stantial harm to his former client, as well as to the legal system.
In determining the appropriate sanction for respondent’s misconduct, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. Louisiana State Bar Ass’n v. Guidry, 571 So.2d 161 (La.1990).
|UA review of the jurisprudence of this state indicates there are no decisions involving vexatious litigation rising to the magnitude of that perpetuated by respondent. However, a review of bar disciplinary cases from other states indicates that under similar facts, those courts have imposed disbarment as a baseline sanction. See In re: Shieh, 738 A.2d 814 (D.C.1999); see also In re: Varakin, 3 Cal. State Bar Ct. Rptr. 179 (Review Dept.1994); Lebbos v. State Bar, 53 Cal.3d 37, 278 Cal.Rptr. 845, 806 P.2d 317 (1991). Considering these authorities, we conclude the baseline sanction for respondent’s misconduct is disbarment.
In deviating from this baseline sanction, we recognize there are some mitigating factors.[8] Respondent has no prior disciplinary record, and has cooperated in the disciplinary process. Additionally, he was subject to other penalties, in the form of the significant monetary sanctions imposed by the district court.
Considering the circumstances, we conclude the three-year suspension from the practice of law recommended by the disciplinary board is appropriate. Accordingly, we will adopt that recommendation.
DECREE
Upon review of the findings and recommendation of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Earl Boydell, Jr. be suspended from the practice of law in Louisiana for a period of three years. All costs and expenses in this matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
CALOGERO, C.J., dissents regarding the discipline imposed and would suspend respondent from practicing law for 18 months.

 Marcus, J., not on panel. Rule IV, Part II, § 3.

.This law firm was owned by respondent and his then-wife and law partner, Deonne Du-Barry. Respondent and Ms. DuBarry were divorced on November 4, 1985. Separate disciplinary proceedings arising out of the Ratcliff matter are pending against Ms. Du-Barry, but are not before the court at the present time. Any findings of fact by this court in the instant case should not be interpreted as being controlling in Ms. DuBarry’s disciplinary proceedings.

. It was apparently a common practice at that time for the defendant to refuse to disclose the cost of the annuity, so as not to jeopardize the tax-free status of the payments to the plaintiff.

. There is no dispute concerning the attorney's fees charged on the cash portion.

. These services included, among others, opening the succession of Mrs. Ratcliff's late husband and having Mrs. Ratcliff appointed the tutor of her minor son.

. These included the previously threatened suit against Mrs. Ratcliff for $14,244 in unpaid legal fees, a $7 million defamation and malicious prosecution suit against Mrs. Rat- *329 cliff, and a $10 million defamation and malicious prosecution suit against Ms. Barrios and her husband. The sheer volume of pleadings filed in these consolidated matters makes synopsis of them in a few paragraphs impossible. For further details of the vexatious civil litigation, see the court of appeal's opinion in Ratcliff v. Boydell, 93-0362 (La.App. 4th Cir.4/3/96), 674 So.2d 272.

. In fact, Ms. Barrios has claimed a portion of the attorney's fees respondent earned in another case.

. At the time much of the conduct in this case occurred, the former Code of Professional Responsibility was in effect. Those rules were superseded on January 1, 1987, when the current Rules of Professional Conduct were adopted.

. We note that the ODC has indicated it did not urge disbarment in this case due to the existence of the mitigating factors.