ATTORNEY DISCIPLINARY PROCEEDINGS.
JjPER CURIAM.
This disciplinary proceeding arises from one count of formal charges instituted by the Office of Disciplinary Counsel (“ODC”) against respondent, Deonne DuBarry, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS

Ratcliff Settlement

In October 1984, respondent and her then-husband and law partner, Earl Boy-dell, Jr.,[1] filed a wrongful death and survival action on behalf of their client, Cynthia Ratcliff, personally and on behalf of her two year-old son, arising out of the death of Mrs. Ratcliffs husband. In October 1985, a settlement was confected whereby Mrs. Ratcliff received $225,000 in cash, to be paid immediately (the “cash portion”), and a deferred portion which was placed into an annuity (the “structured portion”).
Because the firm had not previously handled a structured settlement, Mr. Boydell and respondent were unsure how to calculate the 40% contingency fee due the. firm under its agreement with Mrs. Ratcliff. Rather than consulting with an expert on structured settlements to determine the actual value of the deferred payments as | ¡.recommended by the defendant’s counsel, Mr. Boydell telephoned his certified public accountant (“CPA”) to *1275 discuss the value of the settlement. The CPA advised Mr. Boydell that without knowing either the applicable interest rate or the cost of the annuity, he could only calculate a range of present-day values based upon various interest rates.
At a meeting conducted on November 5, 1985, which was not attended by respondent,[2] Mr. Boydell disbursed a check to Mrs. Ratcliff in the amount of $72,782.50 representing her share of the settlement. From the cash portion, Mr. Boydell had deducted attorney’s fees in the amount of $90,000 and costs in the amount of $17,217.50. In addition, he also deducted an additional $45,000 in attorney’s fees which he charged on the structured portion, based upon his own general estimation that the annuity had a present-day value of $112,500.
While there was no dispute concerning the attorney’s fees charged on the cash portion, the actual cost of the annuity was only $49,465, and a 40% attorney’s fee on the structured portion should have been less than $20,000. Therefore, two weeks following the disbursement, Mrs. Ratcliff wrote a letter directed to Mr. Boydell questioning the calculation of the attorney’s fees on the structured portion. The following day, Mr. Boydell forwarded a letter to Mrs. Ratcliff attesting to the accuracy of the calculation and misrepresenting that it was based on information from the legal and financial experts involved in the wrongful death litigation. When respondent learned Mrs. Ratcliff was questioning the fee calculation, she simply relied on Mr. Boydell’s assertion that he was handling the problem. Respondent did not consult an expert on structured settlements regarding the accuracy of the calculation.
| ¡¡Mrs. Ratcliff subsequently retained a new attorney, Dawn Barrios, who forwarded to Mr. Boydell a report from an economist estimating the cost of Mrs. Ratcliffs annuity was $44,900. Relying on the report, Ms. Barrios sought a refund from the DuBarry & Boydell Law Firm of more than $25,000 in attorney’s fees charged on the structured portion. Rather than properly addressing the dispute, Mr. Boydell sent a letter to Mrs. Ratcliff informing her that because she had “decided to look ‘a gift-horse in the mouth’ ” by retaining new counsel, the firm was billing her $14,244 for legal services performed incidental to the wrongful death suit.

Fee Dispute and Defamation Litigation

On June 23, 1986, Mrs. Ratcliff filed suit against respondent, Mr. Boydell and their firm to recover the disputed attorney’s fees. Cynthia Ledet Ratcliff, et al. v. Earl M.J. Boydell, Jr. and Deonne DuBarry d/b/a DuBarry & Boydell, and DuBarry & Boydell, APLC, No. 86-11313 c/w 86-15175, 86-19056, and 90-2303 on the docket of the Civil District Court for the Parish of Orleans. Over the next several years respondent and Mr. Boydell filed innumerable pleadings, consisting of bad faith and meritless motions, reconventional demands and appeals, in an effort to harass and intimidate Mrs. Ratcliff and Ms. Barrios. Mrs. Ratcliff in turn sought damages and sanctions for these abusive litigation tactics.
One of the defenses raised by respondent was that she was not responsible for the abusive pleadings, which she claimed were filed by Mr. Boydell without her authorization. In rejecting this argument, the trial judge stated:
*1276 [Ms. DuBarry] specifically alleged that Mr. Boydell filed most, if not all, of the pleadings in this matter up to trial and that she did not authorize him to sign her name to a number of the pleadings. She admitted that she did not until just prior to the trial specifically demand that he not sign her name to the pleadings ... Ms. DuBarry conceded that |4she took no personal affirmative actions to settle the fee dispute short of allowing Mr. Boydell to handle the matter.
if! * *
The record reflects that at all relevant times herein, Earl Boydell had the implicit, if not explicit, authority of DuBar-ry to initiate the multitude of pleadings filed ...
For these reasons, the court holds that Deonne DuBarry and Earl M.J. Boydell, Jr. are jointly, severally and solidarity liable for all actions in which DuBarry and Boydell are cast in judgment.
The trial judge then rendered judgment in favor of Mrs. Ratcliff and awarded Mrs. Ratcliff $25,214 in disputed attorney’s fees. He also sanctioned respondent and Mr. Boydell $43,000 for abuse of process, $12,000 for unethical practices, fraud and conversion and $18,000 for intentional infliction of emotional distress. In discussing the latter claim, the trial judge wrote:
Considering the foregoing law in light of the facts of this case, the court finds that plaintiff has sustained her burden of proving an intentional tort by defendants. It is further felt that DuBarry and Boydell’s vindictive, obstreperous, and dilatory tactics over the six year course of this litigation amounted to nothing short of extreme and outrageous conduct against this plaintiff. They launched a counterattack against Rat-cliff and Barrios by filing million dollar defamation suits against plaintiff, her attorney, and her attorney’s husband. Over the course of this self-protracted litigation, DuBarry and Boydell admittedly falsely sued Ratcliff for additional attorneys’ fees not owed; they, without due diligence, used a private process server calculated to intentionally upset plaintiff by serving her at home and work rather than through her attorney of record; they obstinately refused to answer Ratcliffs petition, in an attempt to wear her down, for nearly three and one half (3)6) years and then took a devolutive appeal from a court order to answer; and they frivolously filed motions, exceptions, third-party and recon-ventional demands (for many of which article 863 sanctions were awarded), de-volutive appeals, unwarranted requests to stay proceedings, and other delaying requests too numerous to state.
When one considers the fact that none of defendants’ counter-actions were found to be meritorious, or were based upon informed advice of competent experts or | .¡counsel, such rile conduct is indeed so extreme or outrageous as to go beyond all possible bounds of decency and to be regarded as utterly intolerable in a civilized community. The long history of intimidating tactics, multitudinous pleadings, and unwarranted delays reveal a clear and convincing pattern of deliberate, repeated harassment over a period in excess of six years. These extreme actions obviate any bona fide legal privilege DuBarry and Boydell may have enjoyed.... [T]he evidence is uncontro-verted that plaintiff was particulary susceptible to emotional distress and that DuBarry and Boydell had knowledge of such susceptibility. Furthermore, by his own admission, Earl Boydell indicated that he intended to cause plaintiff some degree of distress. When viewed in its totality, this court finds that Du- *1277 Barry’s and Boydell’s conduct amounted to more than a lesser degree of fright, humiliation, embarrassment or worry. Their conduct can only be classified as extreme and outrageous conduct intended or calculated to cause Ratcliff severe emotional distress, [emphasis added]
Respondent and Mr. Boydell appealed the trial court’s judgment. On appeal, respondent again argued she was not directly involved in this case, but that Mr. Boydell alone handled everything. In affirming the trial court’s judgment, the court of appeal squarely rejected respondent’s contention:
First and foremost, the contingent fee contract whose breach is the basis of this suit was with her and Boydell. She was an obligor under that contract. If she delegated her duties to Boydell this did not relieve her of her obligation to plaintiff. Second, while Boydell was not the principal actor in the mishandling of the fee, she knew that a dispute existed and did nothing to resolve it. She was present at the November 5 meeting,[3] she participated in some of the court hearings and depositions, and she allowed Boydell to sign her name to pleadings. Finally, this court’s opinion in Ratcliff v. Boydell, 540 So.2d 537 (La.App. 4th Cir.1989), writ denied, 546 So.2d 175 (La.1989) demonstrates greater participation by Du Barry than she claims, [footnote added]
Ratcliff v. Boydell, 93-0362 (La.App. 4th Cir.4/3/96), 674 So.2d 272, 281. Thereafter, respondent paid Mrs. Ratcliff $185,000 and obtained a release from her.
I «DISCIPLINARY PROCEEDINGS

Formal Charges

On June 10, 1992, Mrs. Ratcliff and Ms. Barrios filed a complaint against respondent with the ODC.[4] Following a lengthy investigation, the ODC instituted one count of formal charges against respondent, alleging that respondent’s conduct violated numerous provisions of both the Code of Professional Responsibility, which was in effect until January 1, 1987, and the Rules of Professional Conduct.[5] Specifically, the charges alleged respondent failed to properly advise her client regarding legal matters, misrepresented the cost of the annuity, retained an excessive fee, failed to adequately account for legal fees, failed to properly hold those fees in trust, failed to supervise the actions of her partner and employee, knowingly assisted her partner in engaging in misconduct, commingled and converted client funds, filed bad faith and meritless claims and engaged in conduct involving fraud and misrepresentation.
Respondent filed an answer denying any misconduct on her part. Specifically, she alleged she played no role in the disbursement of the settlement funds. Although she admitted to filing a suit for defamation against her former client, respondent argued that “Mr. Boydell filed other claims and/or suits against Mrs. Ratcliff, as to which [respondent] had no control, was not *1278 a party, had limited knowledge and/or was not responsible.” In support, respondent asserted that approximately one year after suit was filed, she severed her professional relationship with Mr. Boydell. Although she conceded he continued to represent her in the litigation, she maintained she was 17unaware of his abusive litigation tactics until two months prior to trial. Based on respondent’s answer, the matter proceeded to a formal hearing.[6]

Hearing Committee Recommendation

In its written findings and recommendation, the hearing committee concluded respondent had no direct knowledge of the magnitude of the animosity involved in the litigation since Mr. Boydell signed respondent’s name to many pleadings without her consent or knowledge, and that she had only limited involvement in the suits after the initial filings. Further, the hearing committee concluded that since respondent relied on Mr. Boydell’s calculation of the fee, she did not fail to properly advise Mrs. Ratcliff on the matter or retain a clearly excessive fee as defined by the Code of Professional Responsibility.
Nonetheless, the hearing committee determined respondent did engage in professional misconduct. First, the committee concluded respondent failed to place the disputed portion of the fee in trust when she learned Mrs. Ratcliff had filed suit against respondent’s firm contesting the fee calculation. Next, it found respondent breached her duty to refrain from filing suit, asserting a position, conducting a defense, delaying a trial or taking any other actions which she knew, or which should have been obvious to her, were designed merely to harass or maliciously injure her client. The committee recognized that the mere fact that the litigation spanned in excess of ten years should have been an indicator to respondent that the litigation was causing harm to her former client and to the legal system.
Based on these findings, the committee concluded respondent intentionally engaged in conduct which violated a duty to her client, to the public and to the legal | «profession. Relying on jurisprudence from this court, the committee determined the baseline sanction was suspension. As an aggravating factor, the hearing committee recognized respondent’s prior disciplinary record.[7] In mitigation, it noted the presence of the mitigating factors asserted by respondent,[8] as well as the delay in the disciplinary process. Accordingly, the hearing committee recommended that respondent be suspended from the practice of law for a period of six months.
Both respondent and the ODC filed an objection to the hearing committee’s findings and recommendation.

Disciplinary Board Recommendation

The disciplinary board accepted the hearing committee’s findings of fact, but deviated from the committee’s conclusions of law. While the board dismissed numerous charges on the basis that the ODC had failed to prove them by clear and convincing evidence,[9] it concluded there was suffi *1279 cient evidence to support | ^professional misconduct on the part of respondent.[10] Like the committee, the board found respondent had a duty to refrain from taking any legal action which she knew, or which should have been obvious to her after ten years of litigation, was merely designed to maliciously injure her client. The board concluded that when respondent became aware of a fee dispute after the funds were disbursed, she failed to comply with her obligation to promptly pay her client the portion of the fee the client was entitled to receive.
In addressing the issue of sanctions, the board determined respondent violated duties owed to her clients, the public and the profession. Moreover,. it found she acted intentionally and caused actual injury to her client, the public and the profession. Like the committee, it recognized respondent’s prior disciplinary record as the only aggravating factor.[11] As mitigating factors, the board noted the presence of personal or emotional problems, cooperative attitude toward the disciplinary proceedings, prior good character and reputation,[12] delay in the disciplinary process and imposition of other penalties or sanctions.
The board relied on Standards 4.12, 6.21 and 7.1 of the ABA’s Standards for Imposing Lawyer Sanctions,[13] as well as juris *1280 prudence from this court.[14] Finding the |10mitigating factors should be given great weight, the board deviated downward from the committee’s recommendation to propose a six-month suspension, with three months deferred.
The ODC filed an objection to the leniency of the board’s proposed sanction, and the matter was set on the court’s docket for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Based on our review of the record, we conclude that respondent’s misconduct in this matter falls into two distinct categories: (1) her initial handling of the fee dispute and (2) her conduct during the subsequent civil litigation over the fee.
As to the fee dispute, we agree that respondent did not personally calculate the fee in the structured settlement which was done by Mr. Boydell. Nonetheless, the record reveals respondent was aware that Mr. Boydell had never calculated an attorney’s fee from a structured settlement. Once Mrs. Ratcliff raised questions concerning the fee, respondent knowingly failed to comply with her duty under Rule lnl.5 to make an effort to amicably resolve the dispute and protect her client’s interests. Rather, the record reveals she neglected to place the disputed funds in trust and failed to undertake any measures to conduct an independent investigation into the fee calculation.
As to the subsequent litigation over the fee, the record demonstrates in a convincing fashion that respondent had direct knowledge of Mr. Boydell’s mishandling of their defense and, in fact, facilitated his vexatious tactics and strategy for ten years. Even accepting respondent’s contention that Mr. Boydell was responsible for these pleadings, the fact remains that respondent knew her name appeared on each of the pleadings, not only as a party to the litigation, but also as counsel. It is further undisputed respondent did not, at any time in the few months prior to the civil trial, advise the court, Mr. Boydell or opposing counsel that she had an objection to Mr. Boydell’s signing her name to the pleadings or that he lacked the authority to do so. In addition, respondent attended many, if not most, of the depositions conducted in the litigation, as well as innumerable hearings through the years on the hundreds of motions filed by Mr. Boydell on their behalf. None of these motions were found to be meritorious or based upon informed advice of competent experts or counsel. Given these facts, it defies logic for respondent to suggest she was somehow unaware of the abusive litigation tactics perpetuated in this case for over a decade.
*1281 Having found misconduct on the part of respondent, we now turn to the appropriate sanction for that misconduct. In determining an appropriate sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of |12the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
We find respondent’s misconduct serious in nature. Respondent knew the calculated use of the vindictive defense tactics, employed in part on her behalf by Mr. Boydell, was intended to cause Mrs. Ratcliff severe emotional distress. While successful in this respect, these abusive actions also negatively impacted Mrs. Rat-cliffs minor son, who was two years old at the time of the wrongful death settlement stemming from the death of his father, and twelve years old at the conclusion of the fee dispute litigation. During this ten year period, Mrs. Ratcliff was intentionally led to believe that she would lose the entire wrongful death settlement award, which was intended to benefit her son. As a result, she felt constrained to not spend any of the settlement, although she was, at times, in dire need of the funds. Likewise, the legal system and profession were harmed through respondent’s frivolous and dilatory abuse of the legal process. As noted by the trial court, respondent’s “vile conduct [was] indeed so extreme or outrageous as to go beyond all possible bounds of decency and to be regarded as utterly intolerable in a civilized community.” Most troubling is respondent’s exhibition of a complete indifference for the emotional distress inflicted on her client for a decade.
In the context of Mr. Boydell’s disciplinary proceeding, we concluded the baseline sanction for perpetuation of vexatious litigation is disbarment, although we ultimately imposed a three-year suspension in that case in light of the mitigating factors. Boydell, 00-0086 at p. 8, 760 So.2d at 332. In formulating an appropriate sanction for respondent’s misconduct, we find her degree of culpability for the institution of this vexatious litigation is less than that of Mr. Boydell, though it is still significant. Several mitigating factors are present, including respondent’s personal and emotional problems during the time period in question, her cooperative attitude |13toward the disciplinary proceedings, her good character and reputation, and the imposition of other penalties and sanctions in connection with the civil litigation. In addition, we recognize the disciplinary proceedings were somewhat delayed in this matter, though the delay is more attributable to the procedural complexity of the case rather than any deficiency of the disciplinary system.
Having considered these factors, we conclude a downward departure from the baseline sanction is appropriate. Accordingly, we will suspend respondent from the practice of law for a period of one year.
DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, briefs and oral argument, it is ordered that Deonne DuBarry be suspended from the practice of law in Louisiana for a period of one year. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to *1282 commence thirty days from the date of the finality of this court’s judgment until paid.

. Separate disciplinary proceedings were brought against Mr. Boydell stemming from his involvement in this matter. On May 26, 2000, this court suspended Mr. Boydell for a period of three years. In re: Boydell, 00-0086 (La.5/26/00), 760 So.2d 326.

. Respondent failed to attend the meeting because it was conducted the day after her divorce from Mr. Boydell became finalized.

. It is undisputed the court of appeal erred in its assertion that respondent was present at the meeting on November 5 when the fees were distributed to Mrs. Ratcliff.

. Mrs. Ratcliff remarried in 1990, and she was by this time known as Cindy Buras. She is referred to as Mrs. Ratcliff throughout this opinion for convenience.

.The formal charges allege violations of DR 1-102(A)(1)(2)(3)(4)(5)(6), DR 1-103(A), DR 2-106(A)(B), DR 2-110(3), DR 6-101, DR 7-101(A)(3), DR 7-102(A), DR 7-106, and DR 9-102 of the Code of Professional Responsibility (in effect until 1/1/87), as well as Rules 1.1, 1.2, 1.3, 1.4, 1.5, 1.15, 1.16(d), 2.1, 3.1, 3.2, 3.3, 3.4, 3.5, 4.4, 5.1, and 8.4(a)(c)(d) of the Rules of Professional Conduct.

. Prior to the hearing, respondent filed a petition for consent discipline. We rejected that petition. In re: DuBarry, 99-0706 (La.5/3/00), 765 So.2d 319.

. In 1995, respondent was reprimanded for attempting a simulated sale of a company owned by her husband at the time, in an effort to bar seizure by her creditors during a period of financial difficulty. In re: DuBarry, 94-ADB-105 (5/3/95).

. In mitigation, the committee recognized respondent’s personal and professional difficulties involving Mr. Boydell and her third husband, and medical problems concerning her and several members of her family, including the death of her mother.

. The disciplinary board dismissed the following charges: DR 9-102(A)(2) (commingling of client funds); DR 1-102(A)(2) (circumventing *1279 a disciplinary rule through actions of another); DR 1 — 102(A)(3) (engaging in illegal conduct involving moral turpitude); DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1-102(A)(6) (engaging in conduct that adversely reflects on the fitness to practice law); DR 1-103(A)(3) (disclosure of information to authorities); DR 2-106(A) & DR 2-106(B) (charging an excessive fee); DR 2-110(3) (failure to refund an unearned portion of an advanced fee); DR 6-101 (incompetence); and DR 7-101 (A)(3) (prejudicing or damaging a client during the course of their professional relationship) of the Code of Professional Responsibility, as well as Rule 1.1 (incompetence); Rule 1.3 (neglect of legal matter); Rule 1.4 (failure to communicate); Rule 1.5 (excessive fee); Rule 1.15 (safekeeping of client property); Rule 1.16(d) (failure to return an unearned fee); Rule 2.1 (exercising independent judgment); Rule 3.2 (expediting litigation); Rule 3.4 (fairness to opposing party and counsel); Rule 5.1 (responsibilities of partner); and Rule 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.

.The disciplinary board determined respondent violated numerous professional provisions: DR 1-102(A)(1) (violating the professional rules); DR 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice); DR 7-102(A)(l) (refraining from legal action which harasses or maliciously injures another); DR 9-102(B)(4) (prompt payment of funds due a client) of the Code of Professional Responsibility, as well as Rule 3.1 (meritorious claims and contentions); Rule 3.3 (candor toward a tribunal); Rule 3.5(c) (conduct intended to disrupt a tribunal); Rule 4.4 (respect for rights of third persons); Rule 8.4(a) (violating the professional rules) and Rule 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.

. Although not recognized by the board, we note that vulnerability of the victim is also present under these facts.

. A Louisiana appellate judge attested in writing to respondent’s good character and reputation in the community.

. Standard 4.12 provides "[sjuspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.”
Standard 6.21 provides' "[djisbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, causes serious injury or potentially serious injury to a party, or causes serious or potentially serious interference with a legal proceeding.”
Standard 7.1 provides "[djisbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duly owed as a professional with the intent to *1280 obtain benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.”

. The board cited the following cases: In re: Butler, 96-1235 (La.9/13/96), 679 So.2d 383 (six month suspension imposed on attorney for filing meritless claims); In re: Wells, 98-DB-071 (4/13/99) (public reprimand imposed on attorney for filing a meritless suit); In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343 (six month suspension imposed on attorney for filing suit against a client in bad faith and failing to deliver property to the client); and In re: King, 94-0686 (La.11/30/94), 646 So.2d 326 (disbarment imposed for attorney’s willful blindness regarding her husband attorney's insurance fraud). In addition, the board referred to this court’s opinion in In re: Boydell, 00-0086 (La.5/26/00), 760 So.2d 326, where this court imposed a three year suspension on Mr. Boydell for his participation in the Ratcliff matter. The board recognized that the record at bar demonstrates that respondent’s level of misconduct was less egregious than the conduct of Mr. Boydell, and the mitigating circumstances presented in the instant matter are more compelling.