*736 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.*
|, This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Darien D. Lester, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS AND PROCEDURAL HISTORY
The ODC filed three sets of formal charges against respondent. The first set of formal charges, 02-DB-101, was filed in September 2002.[1] The second set of formal charges, 06-DB-039, was filed in July 2006. Respondent answered both sets of formal charges, admitting some misconduct while denying other misconduct. The two matters were consolidated by order of the hearing committee chair before proceeding to a formal hearing on the merits conducted by the hearing committee on June 25, 2008.
The third set of formal charges, 08-DB-054, was filed in June 2008. Respondent failed to answer the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee 12written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.
Thereafter, the three sets of formal charges were consolidated by order of the disciplinary board. The board subsequently filed in this court a single recommendation of discipline encompassing all three sets of formal charges.

02-DB-101

Count I — The Petterway Matter
Respondent’s personal injury client, Fel-ton Petterway, received medical treatment from Chiro-Plus. When Mr. Petterway’s case settled in June 1998, respondent sent Chiro-Plus a $2,165 check drawn on his operating account to pay Mr. Petterway’s medical expenses.[2] However, the check was dishonored due to insufficient funds in *737 the account. Thereafter, respondent sent Chiro-Plus $650. In the latter part of 1999, when respondent failed to pay the balance, Chiro-Plus referred the check to the Caddo Parish District Attorney’s Office. Between February 2000 and May 2001, respondent made sporadic monthly payments to Chiro-Plus totaling $2,165.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a) (safekeeping property of clients or third persons) and 1.15(b) (failure to timely remit funds to a client or third person).
Count II — The Birmingham Matter
Respondent’s personal injury client, William Birmingham, also received medical treatment from Chiro-Plus. When Mr. Birmingham’s case settled in July |¾1998, respondent deducted $1,116 from the settlement to pay the expenses owed to Chi-ro-Plus. However, respondent failed to promptly forward the funds to Chiro-Plus. While the funds were in respondent’s client trust account, the balance of the account fell below zero. In the latter part of 1999, respondent finally sent Chiro-Plus the funds.
The ODC alleged that respondent’s conduct violated Rule 1.15(b) of the Rules of Professional Conduct.
Count III — The Autrey Matter
Respondent was retained to handle Fle-nard Autrey, Jr.’s criminal appeal in the Louisiana Court of Appeal, Second Circuit. Respondent failed to meet briefing deadlines imposed by the court of appeal and failed to comply with its direct orders to file appropriate briefs and assignment of errors. Accordingly, on May 8, 1998, the court of appeal found respondent guilty of contempt of court and ordered him to pay a $100 fine, plus $5 in court costs.
Thereafter, respondent filed improper motions to reconsider, which the court of appeal specifically instructed him not to file. Accordingly, on November 9, 1998, the court of appeal again found respondent guilty of contempt of court and ordered him to pay a $350 fine, plus court costs. The court of appeal also sentenced him to serve six months in jail, which sentence was suspended for one year subject to respondent’s compliance with special conditions.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1 (failure to provide competent representation to a client), 1.3 (failure to act with reasonable diligence and | promptness in representing a client), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).

06-DB-039

Count I — The Bratton Matter
In 1998, respondent represented Alvin Bratton in a criminal matter. After Mr. Bratton was convicted, respondent agreed to represent him in the appeal and post-conviction relief process. Thereafter, respondent failed to adequately communicate with Mr. Bratton. As such, Mr. Bratton requested the return of his file. However, respondent failed to return the file.
In June 2003, Mr. Bratton filed a disciplinary complaint against respondent. Respondent failed to timely respond to the complaint.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.4 (failure to communicate with a client), 1.16 (obligations upon termination of the representation), and 8.1(c) (failure to cooperate with the ODC in its investigation).
*738 Count II — The Thompson Matter
Several of respondent’s personal injury clients were treated by Dr. John Thompson. In June 2001, respondent forwarded Dr. Thompson a $2,200 check from his trust account to pay a client’s bill. However, the check was dishonored due to insufficient funds in the account. Dr. Thompson turned the check over to the District Attorney’s Office. In November 2002, respondent forwarded a $2,200 payment to the District Attorney’s Office to reimburse Dr. Thompson.
| sin the meantime, Dr. Thompson’s office contacted several of respondent’s clients and learned that them cases had settled. Nonetheless, respondent did not forward medical bill payments to Dr. Thompson. He informed Dr. Thompson that he had instead converted the funds to his own use.[3] In December 2001, after repeated demands from Dr. Thompson, respondent tendered a $10,000 cashier’s check as a lump sum payment for his clients’ bills. However, he failed to remit the balance of $6,255.
In September 2003, Dr. Thompson filed a disciplinary complaint against respondent. Respondent failed to timely respond to the complaint.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15 (safekeeping property of clients or third persons), 8.1(c), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
Count III — The Allen Matter
In August 1999, Audrey Allen hired respondent to represent her in an employment discrimination claim and paid respondent’s $500 retainer fee. Thereafter, respondent failed to communicate with Ms. Allen, including failing to timely notify her of his office address change. Ms. Allen made numerous appointments to meet with respondent; however, respondent either canceled the appointments or simply failed to show up for them.
In September 2003, Ms. Allen filed a disciplinary complaint against respondent. Respondent failed to timely respond to the complaint.
|fiThe ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3,1.4, and 8.1(c).
Count TV — The Chapman Matter
Patrick Chapman hired respondent to represent him in a police brutality claim. Respondent neglected the case, causing it to be dismissed. Thereafter, respondent attempted to settle the resulting malpractice claim by agreeing to pay Mr. Chapman $1,000. However, respondent failed to inform Mr. Chapman to seek independent counsel to advise him about the malpractice claim.
In November 2003, Mr. Chapman filed a disciplinary complaint against i'espondent. Respondent failed to timely respond to the complaint.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.8(h) (a lawyer shall not settle a malpractice claim with an unrepresented client unless the client is advised in writing to seek the advice of independent legal counsel), and 8.1(c).
Count V — The Lane Matter
In July 2005, Kimberly Lane hired respondent to represent her in a child custo *739 dy matter. Respondent was to defend Ms. Lane against a rule for contempt. She also requested representation with respect to visitation and child support.
Ms. Lane provided respondent with documents that would aid her defense. She also informed respondent that her private investigator had information to help her case. Nonetheless, respondent did not contact the investigator and did not use any of the documents or information at the hearing. Instead, respondent pressured Ms. Lane to accept a settlement increasing visitation for the opposing party and reducing the 17amount of child support she received from the opposing party. Respondent advised her that the judge was “in a bad mood” and would put her in jail if she tried to present evidence in her defense or did not agree to the settlement. However, Ms. Lane contended that the judge’s secretary later told her this was not true.
In October 2005, Ms. Lane filed a disciplinary complaint against respondent. Respondent failed to respond to the complaint.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.2(a) (scope of the representation), 1.3, 1.4, 8.1(c), 8.4(c).

Hearing Committee Report

As previously noted, the formal charges in 02-DB-101 and 06-DB-039 were consolidated for a formal hearing on the merits. After considering the testimony and evidence presented at the hearing, the hearing committee made the following findings:
The Petterway Matter-Respondent admitted the factual allegations and alleged rule violations.
The Birmingham Matter — Respondent admitted the factual allegations, and the committee further found that respondent never paid Chiro-Plus for the services rendered to Mr. Birmingham. The committee determined that respondent violated Rule 1.15(b) of the Rules of Professional Conduct.
The Aiitrey Matter — Respondent admitted the factual allegations and admitted that he violated Rule 1.3. Additionally, the committee found that respondent violated Rules 1.1 and 8.4(d).
| ¿The Bratton Matter — Respondent failed to keep Mr. Bratton informed of the status of his case and failed to include him in the decision-making concerning his post-conviction relief. Respondent also failed to surrender Mr. Bratton’s file. Finally, respondent failed to cooperate with the ODC’s investigation. Based on these facts, the committee found that respondent violated Rules 1.4,1.16, and 8.1(c).
The Thompson Matter- — Several of respondent’s clients utilized Dr. Thompson’s chiropractic services. Respondent failed to remit to Dr. Thompson the money he retained from settlement funds when he settled several personal injury matters. Respondent also attempted to pay one account with a check that was dishonored by his bank. Respondent used the funds to maintain his office while he was recovering from surgery. He still owes Dr. Thompson $6,255. Respondent admitted that he violated Rules 1.15 and 8.1(c). Additionally, the committee found that respondent violated Rule 8.4(c) by engaging in dishonest conduct.
The Allen Matter — Respondent admitted the factual allegations and alleged rule violations.
The Chapman Matter — Respondent admitted the factual allegations and alleged rule violations.
The Lane Matter — Respondent had an obligation to attempt to present a defense to the rule for contempt as that was what *740 Ms. Lane hired him to do, but he failed to do so. Respondent also failed to contact the investigator and failed to meet with Ms. Lane prior to the contempt hearing in order to prepare her for her testimony. Based on these facts, the committee found that respondent violated Rules 1.2(a) and 1.3. Respondent also admitted that he violated Rule 8.1(c). However, the committee found there was insufficient evidence of a violation of Rules 1.4 and 8.4(c).
|flThe committee determined that respondent violated duties owed to his clients, the public, the legal system, and the legal profession. He acted knowingly and negligently. He caused actual harm in an amount less than $15,000. He also harmed the judicial system and caused potential harm to his clients. After reviewing the ABA’s Standards for Imposing Larvyer Sanctions, the committee determined that the baseline sanction is disbarment.
In aggravation, the committee found a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, vulnerability of the victims, and indifference to making restitution. In mitigation, the committee found the absence of a prior disciplinary record, the absence of a dishonest or selfish motive, inexperience in the practice of law (admitted 1997), delay in the disciplinary proceedings, and remorse.
Under these circumstances, and considering the applicable case law, the committee recommended that respondent be suspended from the practice of law for three years, with all but one year deferred, followed by two years of supervised probation with conditions.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

08-DB-054

Count I — The Davis Matter
Gloria Davis filed a complaint against respondent with the ODC. Despite receiving notice of the complaint by certified mail, respondent failed to provide a response.
ImThe ODC alleged that respondent’s conduct violated Rule 8.1(c) of the Rules of Professional Conduct.
Count II — The Unauthorized Practice of Law Matter
On October 31, 2005, respondent was declared ineligible to practice law for failure to pay his bar dues and the disciplinary assessment.[4] Despite receiving written notice regarding his ineligibility, on February 15, 2006, respondent appeared in district court to represent a client in a civil matter. The trial judge confronted respondent about his ineligibility, and respondent admitted to the opposing counsel that he received notice of his ineligibility prior to February 15, 2006. On February 17, 2006, respondent was returned to eligible status.
In October 2006, the opposing counsel filed a disciplinary complaint against respondent. Respondent failed to respond to the complaint.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 5.5(a) (engaging in the unauthorized practice of law) and 8.1(c).
*741 Count III — The Holmes Matter
Peoples State Bank (“PSB”) brought a foreclosure action against respondent’s client, Patricia Holmes. In response, respondent filed two successive and frivolous lawsuits against PSB under the state and federal Equal Credit Opportunity Act.
In the state court action, the trial court concluded after a trial on the merits that there was “not a scintilla of evidence” to support Ms. Holmes’ claim that she had _Jjjbeen unfairly denied credit. Rather, the court noted that Ms. Holmes “got the money even though there was testimony from the bank president that based on the amount of money she made and based on her assets, she probably should not have received the money.” The court concluded that Ms. Holmes’ claim was “in essence ... that the bank was negligent for loaning her too much money too fast.”
On December 1, 2000, the judge sanctioned respondent and found him in constructive contempt for failing and/or refusing to permanently remove a notice of lis pendens from Ms. Holmes’ foreclosed property after being ordered to do so. He was sentenced to serve ninety days in jail, which sentence was suspended, and placed on one year of unsupervised probation. He was also ordered to pay costs and attorney’s fees totaling approximately $9,000, which he has never paid.
After the state court suit was dismissed, respondent filed the same claim against PSB on Ms. Holmes’ behalf in the United States District Court for the Western District of Louisiana. PSB filed a motion for summary judgment, which the judge granted. Accordingly, the federal lawsuit was dismissed on December 7, 2000. On February 23, 2001, the judge found that the lawsuit “was presented for an improper purpose, namely to harass the defendants, to cause unnecessary delay and ultimately, to increase the cost of this litigation.” Consequently, the judge sanctioned respondent pursuant to PSB’s unopposed motion for sanctions.
In September 2006, the attorney for PSB filed a disciplinary complaint against respondent. Respondent failed to respond to the complaint, necessitating the issuance of a subpoena to obtain his sworn statement.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 3.1 (meritorious claims and contentions), 11⅞3.3 (candor toward the tribunal), 4.4 (respect for rights of third persons), 8.1(c), and 8.4(d).
Count IV — The Hayes Matter
In November 2005, James Hayes, Jr. hired respondent to handle his divorce. Mr. Hayes paid respondent’s $550 fee plus $100 for court costs. Respondent did not appear in court on Mr. Hayes’ behalf on April 27, 2006 due to a scheduling conflict. Instead, he had another attorney stand in for him, and the matter was continued to June 29, 2006. However, the matter was continued yet again because respondent failed to subpoena a necessary witness. Thereafter, respondent failed to communicate with Mr. Hayes. According to respondent, Mr. Hayes then discharged him. Nevertheless, respondent did not refund the unearned portion of the fee or make any attempt to resolve the fee dispute, claiming instead that he earned the entire fee.
In November 2006, Mr. Hayes filed a disciplinary complaint against respondent. Respondent failed to respond to the complaint, necessitating the issuance of a subpoena to obtain his sworn statement.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules *742 1.3, 1.4, 1.5(f)(5) (failure to refund an unearned fee), and 8.1(c).
Count V — The Devers Matter
In March 2007, Sandra Devers hired respondent to handle a child support and community property settlement matter. Ms. Devers paid respondent $300 toward his $1,000 fee. Thereafter, Ms. Devers had trouble contacting respondent via telephone. On several occasions she went to his office, but the office was always closed. | ^Respondent did not file any pleadings on Ms. Devers’ behalf. On May 16, 2007, Ms. Devers sent respondent a letter, discharging him and requesting a refund of the $300. Respondent did not respond to Ms. Devers’ request for a refund.
In June 2007, Ms. Devers filed a disciplinary complaint against respondent. Respondent failed to respond to the complaint, necessitating the issuance of a subpoena to obtain his sworn statement.[5] Respondent failed to appear for the sworn statement. Instead, he faxed a written response to Ms. Devers’ complaint, wherein he indicated that he should return $200 to Ms. Devers.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3,1.4,1.5(f)(5), and 8.1(c).

Heating Committee Report

As previously noted, respondent failed to file an answer to the formal charges in 08-DB-054, and consequently, the factual allegations contained therein were deemed admitted. After considering the ODC’s deemed admitted submission, the hearing committee determined that respondent violated the Rules of Professional Conduct as charged in the formal charges. The committee found that the following aggravating factors are present: a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, substantial experience in the practice of law (admitted 1997), and indifference to making restitution.[6] The sole mitigating factor found by the committee was the absence of a prior disciplinary record.
|l4In light of this court’s prior jurisprudence involving similar misconduct and the aggravating factors present, the committee recommended that respondent be suspended from the practice of law for three years.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

Disciplinary Board Recommendation

02-DB-101 & 06-DB-0S9 & 08-DB-05U

After reviewing these consolidated matters, the disciplinary board determined that the hearing committee’s factual findings in 02-DB-101 and 06-DB-039 are not manifestly erroneous, except the finding that respondent did not pay Mr. Birmingham’s bill with Chiro-Plus. The board noted that an employee of Chiro-Plus testified that Chiro-Plus did receive full payment from respondent for the balance of Mr. Birmingham’s account. The board further determined that the committee’s factual findings in 08-DB-054, which is a deemed admitted matter, are supported by *743 the factual allegations in the formal charges and/or by the evidence submitted in support of the allegations. The board also determined that respondent violated the Rules of Professional Conduct as charged in the formal charges, with the exception of Rules 1.4 and 8.4(c) in the Lane matter and Rule 3.3 in the Holmes matter.
The board determined that respondent acted negligently in some matters, which was attributable to his inexperience in the practice of law, while he acted knowingly, if not intentionally, in other matters. He violated duties owed to his clients, the legal system, and the legal profession. He has also caused significant actual harm to his clients, the legal system, opposing parties in litigation, and third-party medical 11fiproviders. Citing the ABA’s Standards for Imposing Laivyer Sanctions, the board determined that disbarment is the baseline sanction.
Aggravating factors found by the board are as follows: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with the rules or orders of the disciplinary agency, vulnerability of the victims, and indifference to making restitution. The board found the following mitigating factors present: absence of a prior disciplinary record, inexperience in the practice of law (only in the Petterway, Birmingham, Autrey, Bratton, Allen, and Holmes matters), and remorse (only in 02-DB-101 and 06-DB-039).
Noting that “the vexatious litigation [in the Holmes matter] would subject Respondent to at least an active period of suspension,”[7] the board found that, when this “intentional contemptuous” conduct is considered with respondent’s other misconduct, disbarment is appropriate. Accordingly, the board recommended that respondent be disbarred. The board also recommended that respondent be ordered to pay any remaining restitution to his victims and pay the sanctions imposed by the courts referenced above.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an 11Bindependent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
In this consolidated matter, the hearing committees’ factual findings, as modified by the disciplinary board, are supported by the testimony, evidence, and deemed admitted facts presented in this record. The facts and evidence indicate that respondent failed to provide competent representation to a client, neglected legal mat *744 ters, failed to communicate with clients, failed to refund unearned fees, failed to return a client’s file, issued checks on accounts containing insufficient funds, failed to timely pay third-party medical providers, converted client and third-party funds to his own use, practiced law while ineligible to do so, attempted to settle a malpractice claim without advising his client to seek independent counsel, engaged in frivolous and vexatious litigation, was found in contempt of court and sanctioned in both state and federal court, engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, and failed to cooperate with the ODC in several investigations. Based on this conduct, respondent has violated the Rules of Professional Conduct as found by the committees and the board.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and|17deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
The record supports a finding that respondent’s conduct was negligent, knowing, and intentional. He violated duties owed to his clients, the public, the legal profession, and the legal system. His conduct caused actual harm to his clients, third-party medical providers, and opposing parties in litigation. The record supports the aggravating and mitigating factors found by the board.
By far, respondent’s most egregious misconduct involves his knowing and intentional conversion of client and third-party funds. Respondent testified at the formal hearing that he used these funds to maintain his office while he was recovering from surgery. Under the ABA’s Standards for Imposing Lawyer Sanctions, the baseline sanction for this type of misconduct is disbarment.
In Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), we determined that disbarment was appropriate for conversion cases in which one or more of the following elements are present:
the lawyer acts in bad faith and intends a result inconsistent with his client’s interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings.
We find that a number of these elements are present in this case, which further supports the baseline sanction of disbarment.
| )8Case law also indicates that a lengthy period of suspension is appropriate for an attorney who engages in frivolous and vexatious litigation. See, e.g., In re: Simpson, 07-0070 (La.6/29/07), 959 So.2d 836 (three-year suspension, with all but one year and one day deferred, imposed upon an attorney who charged an excessive legal fee and engaged in harassing litigation with his client), and In re: Cook, 06-0426 (La.6/16/06), 932 So.2d 669 (three-year suspension, with all but eighteen months deferred, imposed upon an attorney who filed repetitive and unwarranted *745 pleadings in ongoing litigation and made frivolous and harassing claims for discovery against third persons not involved in the litigation).
Given respondent’s other misconduct and the numerous aggravating factors present, we find that a downward deviation from the baseline sanction is not warranted. Accordingly, we will adopt the disciplinary board’s recommendation and disbar respondent. We will further order respondent to pay restitution to his victims as well as the sanctions imposed against him.
DECREE
Upon review of the findings and recommendations of the hearing committees and the disciplinary board, and considering the record, it is ordered that Darien D. Lester, Louisiana Bar Roll number 24831, be and he hereby is disbarred. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. It is further ordered that respondent shall pay restitution to his victims subject of the formal charges and shall pay any sanctions which have been imposed against him. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, |19with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Chief Justice Kimball not participating in the opinion.

. During the formal hearing, the ODC withdrew Count IV of 02-DB-101. Accordingly, we will not address that alleged misconduct.

. Respondent testified at the formal hearing that he did not have a trust account at this time.

. Respondent testified at the formal hearing that he used the money to maintain his office while he was recovering from surgery.

. Respondent has a long history of brief periods of ineligibility to practice law for failing to timely pay bar dues and the disciplinary assessment as well as failing to timely comply with mandatory continuing legal education requirements.

. The officer attempting to serve respondent with the subpoena indicated that, on at least two occasions, respondent's office was locked during regular business hours.

. Although the committee did not specifically find as an aggravating factor that respondent acted with a dishonest or selfish motive, it refused to find "absence of a dishonest or selfish motive” as a mitigating factor, stating, "... it appears to this committee that dishonesty, or selfish motive, was the background of some of the complaints alleged against respondent.”

. See, e.g., In re: Boydell, 00-0086 (La.5/26/00), 760 So.2d 326 (three-year suspension); In re: Stratton, 03-3198 (La.4/2/04), 869 So.2d 794 (three-year suspension); and In re: Cook, 06-0426 (La.6/16/06), 932 So.2d 669 (three-year suspension with eighteen months deferred).