PER CURIAM.
 
 *
 

 h This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Arden Wells, an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public.
 
 In re: Wells,
 
 07-1071 (La.11/7/07), 967 So.2d 1148.
 

 UNDERLYING FACTS AND PROCEDURAL HISTORY
 

 The ODC filed two sets of formal charges against respondent which were considered by separate hearing committees before being consolidated by order of the disciplinary board.
 
 [1]
 
 The board then filed in this court a single recommendation of discipline encompassing both sets of formal charges.
 

 07-DB-0U
 

 Count I
 

 In 2004, respondent was charged in Tan-gipahoa Parish with one felony count of extortion for communicating a threat to his opponent in a political campaign with the intention thereby to obtain something of value. He was later acquitted of the 12criminal charge; however, in August 2005, while the charge was still pending, respondent prepared an affidavit which was executed by Charles Chaney, an inmate then incarcerated at Hunt Correctional Center following his convictions of manslaughter and felon in possession of a firearm. The affidavit stated that during a meeting in 1996, Scott Perrilloux, the District Attorney for the 21st Judicial District, accompanied by another attorney and several members of the Hammond Police Department, gave Mr. Chaney $250,000 in cash to murder Cecilia Colona, a resident of Tangipahoa Parish. Respondent notarized the affidavit and then filed it into the public records of Tangipahoa Parish. Respondent did not investigate any of Mr.
 
 *201
 
 Chaney’s allegations before he prepared the affidavit, and he did not otherwise possess any independent, credible information to suggest that the substance of the charges made by Mr. Chaney concerning Mr. Perrilloux were true.
 
 [2]
 
 Accordingly, and considering that respondent was then awaiting trial on the felony extortion charge brought by Mr. Perrilloux, the ODC alleged that “respondent intentionally filed what he knew to be a false affidavit as retribution for Perrilloux bringing felony charges against him,” in violation of Rules 8.2(a) (a lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer) and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.
 

 |
 
 ¿Count II
 

 In August 2006, Sandia Meyers and Shoreline Seafood, Inc., doing business as the Garden Spot Restaurant, filed a petition in district court in St. Tammany Parish appealing the judgment of a justice of the peace court in an eviction matter. On the morning of trial, September 18, 2006, respondent enrolled as counsel of record for Ms. Meyers and Shoreline Seafood. He then moved for a continuance, which was denied. During the trial, respondent made certain misrepresentations to the court which led the presiding judge, Judge William Knight, to observe that issues of “fraud” and “criminality” had surfaced in the proceeding. Specifically, respondent misrepresented to the court that an August 2005 lease was the operative contract in the dispute between the parties, notwithstanding that Ms. Meyers had signed a superseding lease on the same property in September 2006 in consideration for the dismissal of a prior suit against her by the landlord. Furthermore, respondent represented to the court that he was acting as counsel for both Ms. Meyers and Shoreline Seafood, despite the fact that respondent had been provided with documentation indicating that Ms. Meyers had previously transferred a majority interest in the corporation to a third party, Dale Guarino. In an effort to counter the legal effects of the donation, on the day before the hearing, respondent induced Ms. Meyers to revoke the donation to Mr. Guarino. Respondent did not reveal these events to the trial court. Moreover, respondent instructed Ms. Meyers to invoke the Fifth Amendment in an effort to conceal the true facts of the Guarino transaction. Finally, when it became apparent during the hearing that Judge Knight intended to rule against Ms. Meyers on the eviction, respondent improperly advised her to seek bankruptcy protection for Shoreline Seafood, despite knowing that she was not the owner of the corporation.
 

 14At the conclusion of the trial, Judge Knight held respondent in contempt of court. Judge Knight fined respondent $100 and ordered him to serve nine hours in the St. Tammany Parish jail.
 

 The ODC alleged that respondent’s conduct violated Rules 8.1 (meritorious claims and contentions), 3.3 (candor toward the tribunal), and 8.4(c) of the Rules of Professional Conduct.
 

 Count III
 

 In December 2006, respondent filed a lawsuit in the United States District Court for the Eastern District of Louisiana nam
 
 *202
 
 ing some thirty defendants, including all of the judges of the 21st Judicial District. The judges had earlier recused themselves from hearing the criminal case in which respondent was charged with extortion, and an ad hoc judge was appointed to try the matter. Respondent alleged in the federal suit that the recusal of the district judges “manifested bias and prejudice against” him “by violating his right to due process of law and to be tried before an elected district judge as envisioned under the Louisiana Constitution.” Accordingly, respondent sought declaratory and injunc-tive relief enjoining the judges “from ever hearing any case brought by [respondent] personally or as lawyer for any person.”
 

 Uln the same lawsuit, respondent alleged that in connection with the criminal case, District Attorney Scott Perrilloux and several of his assistants committed extortion and perjury, framed him for extortion, tainted the grand jury, tampered with evidence, obstructed justice, tampered with the jury, and made knowingly false statements to the court. The ODC contends that respondent made these claims without any credible evidence to support them.
 

 In the same lawsuit, respondent sued Jacqueline Griffith, a citizen of Tangipahoa Parish who served as a juror in respondent’s criminal case. Although the jury returned a verdict of acquittal on the extortion charge, Ms. Griffith believed respondent to be guilty and voted as such. Respondent claimed in the suit that Ms. Griffith lied during
 
 voir dire
 
 and concealed her social relationships with material witnesses in the prosecution against him. However, the transcript of
 
 voir dire
 
 reflects that Ms. Griffith was candid about her social contacts with the district attorney and the state’s witnesses, notwithstanding which she believed she “could definitely be fair and listen to the facts.” The ODC alleged that respondent’s actions in suing Ms. Griffith compelled her to retain counsel and to seek the dismissal of the meritless claims against her.
 

 Respondent ultimately dismissed the federal suit on his own motion. He nevertheless circulated copies of the petition in various public places in Tangipahoa Parish.
 

 The ODC alleged that respondent’s conduct violated Rules 3.1, 3.3, 8.2(a), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
 

 Count IV
 

 On September 9, 2005, respondent filed suit on behalf of the plaintiff in the matter captioned
 
 Kerry “Skip” Wells v. Jimmy Pepitone,
 
 No. 2005-003054 on the docket of the 21st Judicial District Court for the Parish of Tangipahoa. The suit alleged that the defendant committed a battery on the plaintiff. On September 27, 2005, Stephanie Hymel, an adjuster for the defendant’s homeowner’s insurer, State Farm Insurance Company, telephoned respondent seeking his agreement to an | ^extension of time to respond to the lawsuit. Respondent agreed both to a thirty-day extension of time and to notify State Farm in writing before taking any action adverse to the defendant. Ms. Hymel confirmed the agreement in a letter to respondent dated the same date.
 

 On September 29, 2005, two days after his telephone conversation with Ms. Hy-mel, respondent filed a motion for preliminary default, reciting that no “motion for extension of time has been filed or granted.” On October 5, 2005, respondent confirmed a $5,000 default judgment against the defendant.
 

 In the interim, State Farm had assigned the defense of the litigation to Hammond attorney Ashley Sandage. Upon learning of the default judgment, Ms. Sandage filed
 
 *203
 
 a petition to nullify the judgment on grounds of fraud and ill practices. Responding to the petition for nullity, respondent reconvened and sued Ms. Sandage personally, accusing her of filing a frivolous lawsuit. As a result, Ms. Sandage withdrew from the underlying suit and retained separate malpractice counsel. Thereafter, when Ms. Sandage’s attorney filed a motion for summary judgment seeking sanctions against respondent under La.Code Civ. P. art. 863, respondent dismissed his suit on August 3, 2006, acknowledging that the default judgment he had obtained was “null and void and should now be formally vacated and set aside.”
 

 The ODC alleged that respondent’s conduct violated Rules 3.1, 4.4(a) (in representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person), and 8.4(c).
 

 08-DB-036
 

 On May 22, 2007, the ODC filed in this court a petition seeking respondent’s immediate interim suspension. On May 30, 2007, the court ordered a hearing in the 17matter, which was conducted over five days in June, July, and August 2007. On October 3, 2007, the hearing committee submitted a report recommending that respondent be interimly suspended. This court accepted the hearing committee’s recommendation on November 7, 2007.
 

 On October 11, 2007, while the petition for interim suspension was pending, Timothy Polezcek hired respondent to defend him in a criminal matter involving a charge of aggravated rape. Mr. Polezcek paid respondent $5,000 towards his $15,000 fee to handle the matter. After being retained by Mr. Polezcek, respondent performed little or no work in his legal matter, aside from appearing with Mr. Polezcek at his arraignment and filing routine pre-trial discovery motions. When respondent was interimly suspended by this court in November 2007, he was forced to withdraw from Mr. Polezcek’s case. Nevertheless, and despite requests by his client, respondent failed to refund the unearned portion of the legal fee paid by Mr. Polezcek.
 

 The ODC alleged that respondent’s conduct violated Rules 1.4 (failure to communicate with a client), 1.5(f)(5) (failure to refund an unearned fee), and 8.4(c) of the Rules of Professional Conduct.
 

 DISCIPLINARY PROCEEDINGS
 

 Respondent was served with both sets of formal charges and filed responses thereto, denying any misconduct. He also raised numerous constitutional defenses to his conduct. After a lengthy series of pretrial disputes between respondent and the ODC, the matters then proceeded to separate hearings on the merits.
 

 IsHearing Committee Reports
 

 07-DB-07U
 

 After considering the evidence and testimony presented at the hearing, the hearing committee made factual findings, including the following:
 

 Count I:
 
 Respondent admitted in his testimony that he was acting as an attorney when he met with Mr. Chaney, prepared the affidavit accusing Mr. Perril-loux of conspiring with other individuals to commit murder-for-hire, and filed it into the public records. Further, respondent admitted to conducting little, if any, investigation of the accusations set forth in the affidavit before filing it into the public records. Respondent knew these accusations, made by a felon in prison, were highly unusual, inflammatory, and suspect. Therefore, the committee determined that respondent’s motivation in filing the affida
 
 *204
 
 vit into the public records of Tangipahoa Parish (see note 2, supra) was “mixed,
 
 ie.,
 
 it could help his potential client (remotely), it could arguably ‘preserve it’ (by recording it), but, as a ‘public document,’ it became an easy, cheap, effective,
 
 official
 
 (it was now a ‘recorded affidavit’ in the public records) way to extract some measure of retribution against Mr. Perrilloux, the District Attorney who prosecuted him in his extortion case and an individual who Respondent viewed as a member of the ‘cabal’ that was ‘out to get’ him.” [Emphasis in original.] Based on these findings, the committee determined that respondent violated Rules 8.2(a) and 8.4(c) of the Rules of Professional Conduct, as charged in the formal charges.
 

 Count II:
 
 Respondent’s defense to this count is that he had limited knowledge about the case because he was retained by Ms. Meyers on the day before the trial before Judge Knight, and hence he did not have sufficient time to comprehend the import of the completed leases and “donation” at issue, much less the impact of these | (¡documents on Ms. Meyers’ authority to act or the ownership of Shoreline Seafood. Therefore, respondent contends, he did not act with malice toward the tribunal nor did he knowingly withhold information or obstruct the court. However, the committee found that the testimony and evidence refuted respondent’s claim of limited knowledge and lack of deceit. The committee heard credible testimony that ten days or more before the trial, respondent telephoned Mr. Guarino, the legal 75% owner of Shoreline Seafood, and that during the telephone conversation, respondent exhibited comprehensive knowledge of the transactions and the import of the documents at issue. Respondent sought Mr. Guarino’s agreement to revoke the “donation” ten days or more before the hearing before Judge Knight, and when Mr. Guarino refused, respondent created the “revocation” document unilaterally, knowing that the original document was a transfer (not really a donation) for consideration; a unilateral revocation was totally invalid. Thus, the committee found that respondent deliberately lied to Mr. Guari-no, “revoked” the donation anyway despite the fact that there was no agreement, lied to Judge Knight, and had his clients participate in the deception, which then required them to invoke the Fifth Amendment privilege against self-incrimination in front of Judge Knight. Respondent then effectively compounded this whole series of events by instructing his clients to put the company in bankruptcy, which as minority shareholders they were clearly without authority to do. Based on these findings, the committee determined that respondent violated Rules 3.1, 3.3, and 8.4(c) of the Rules of Professional Conduct, as charged in the formal charges. Respondent’s actions seriously misled the tribunal and placed his clients in jeopardy regarding potential perjury. He also cost Mr. Guarino substantial time and money in rebuking the clearly false legal strategic moves respondent undertook in acting as if his clients controlled the majority ownership in Shoreline Seafood.
 

 11nCount III:
 
 The committee found that respondent’s actions in filing suit in federal court against Mr. Perrilloux, the judges of the 21st JDC, a juror in respondent’s criminal case, and various law enforcement officers was unquestionably disruptive to a tribunal and prejudicial to the administration of justice. It follows respondent’s pattern of using the courts as a method for revenge. Based on these findings, the committee determined that respondent violated Rules 3.1, 3.3, and 8.4(d). The committee did not make any findings
 
 *205
 
 concerning the violation of Rule 8.2(a) alleged in the formal charges.
 
 [3]
 

 Count IV:
 
 Respondent testified that his client in this matter, Kerry Wells, was a close personal friend of James Peoples, a former deputy sheriff who was assisting respondent in reviewing the backgrounds of the potential jurors in respondent’s criminal extortion trial. As a
 
 quid pro quo
 
 for that assistance, apparently respondent agreed to represent Mr. Wells, who had a cause of action for battery against Jimmy Pepitone which was about to prescribe.
 

 Respondent further testified that he was busy preparing for the defense of the extortion trial and was likewise attempting to pursue the matter and obtain the assistance of Mr. Peoples. Mr. Peoples kept pressing respondent to obtain results for Mr. Wells. Respondent testified that he had no recollection of receiving a telephone call from the insurance adjuster, Ms. Hymel, asking for an extension of time and had no recollection of receiving her letter of September 27, 2005 (approximately one month after Hurricane Katrina) confirming their discussion. The issue is whether respondent thereafter acted improperly, maliciously, or selfishly,
 
 i. e.,
 
 to keep Mr. Peoples employed and happy and helping him in his criminal trial, in filing a default Injudgment, notwithstanding that he had previously granted an extension to the insurance adjuster. On that issue, the committee concluded that respondent’s testimony about not recalling the phone conversation or receipt of the letter from the insurance adjuster has some limited credibility, given the impact of Hurricane Katrina, and recognizing, with some justification, respondent’s all-consuming concern about his pending criminal trial. Nevertheless, the committee concluded that respondent’s principal motivation was to keep Mr. Peoples, an individual who was assisting him in his extortion trial, satisfied.
 

 The committee found that conversely, respondent provided no justification whatsoever for the personal countersuit against Ms. Sandage, the attorney who filed the petition for nullity of the default judgment.
 
 [4]
 
 Respondent testified that he had prior “problems” with Ms. Sandage, and that his principal motivation in filing the countersuit against her was that “she hadn’t investigated it either. I think maybe she should have made some effort to contact me and find out why I had done what I had done before she filed that Petition for Nullity. I think she had an obligation as well.” The committee found that respondent made no effort to amicably resolve the issues associated with the propriety of taking the default judgment. A dispute arose concerning an extension of time to file an answer or other responsive pleading in a rather straightforward battery/assault suit for damages, yet respondent again escalated the issue by instituting a counterclaim against the attorney, forcing her recusal, the retention of additional counsel, her notification of her insur-
 
 *206
 
 anee carrier, and, yet again, another complaint to the ODC.
 

 112Based on these findings, the committee determined that respondent violated Rules 3.1, 4.4(a), and 8.4(c) of the Rules of Professional Conduct, as charged in the formal charges.
 

 Turning to the issue of an appropriate sanction, the committee did not discuss in its report the duties violated by respondent, his mental state, or the injury caused, nor did the committee assess the applicable baseline sanction. The committee also did not directly address the aggravating or mitigating factors present. The committee did note, however, that presented with “numerous opportunities to reconsider and rethink the consequences of his actions,” respondent has “instead used
 
 every
 
 opportunity to exponentially increase the acrimony, litigation, accusations and abusive legal tactics to redress his perceived wrongs ...” [Emphasis in original.] For this misconduct, the committee recommended respondent be disbarred.
 

 Respondent filed an objection to the hearing committee’s report and recommendation in 07-DB-074.
 

 08-DB-036
 

 After considering the evidence and testimony presented at the hearing, the hearing committee made factual findings, including the following:
 

 On October 11, 2007, respondent agreed to represent Mr. Polezcek with respect to the charge of aggravated rape filed against Mr. Polezcek in Tangipahoa Parish. Mr. Polezcek paid respondent $5,000. Respondent made one appearance in court at Mr. Polezcek’s arraignment, and he filed a motion for discovery and inspection on behalf of Mr. Polezcek. Nothing else transpired insofar as the representation of Mr. Polezcek was concerned prior to respondent’s November 7, 2007 interim suspension.
 

 11sThe committee further found that Mr. Polezcek made a timely request to respondent for the return of the $5,000 fee, as evidenced by a letter of November 27, 2007 to respondent from Mr. Polezcek. In response, respondent advised that he attempted to respond to Mr. Polezcek by certified mail on January 8, 2008 and later by telephone, offering to refund $2,000, but he never received an affirmative response from Mr. Polezcek. Respondent admits that he owes a refund to Mr. Polezcek and acknowledges that he offered a refund in the amount of $2,000.
 

 The committee also found that shortly after Mr. Polezcek retained respondent, Mr. Polezcek became aware that disciplinary action might be pending against respondent. While respondent did not affirmatively disclose the matter at the inception of his representation of Mr. Polezcek, the committee noted that Mr. Polezcek’s testimony and his subsequent actions indicate that the pending disciplinary matter was being discussed in the community and that, when Mr. Po-lezeek inquired about respondent’s status as a practicing attorney, respondent admitted that he could no longer handle the case because he was suspended. The committee did not therefore believe that respondent attempted to conceal the matter. The committee further concluded that respondent did not earn the bulk of the $5,000 fee paid by Mr. Polezcek and that respondent did not act appropriately in attempting to refund only $2,000, or in failing to place any amount of the fee that remained in dispute in his client trust account pending the resolution of such dispute.
 
 [5]
 

 
 *207
 
 Based on these findings, the committee found that respondent violated Rule 1.5(f)(5) of the Rules of Professional Conduct with respect to the failure to return an unearned fee. However, the committee found the ODC did not prove by clear and convincing evidence the alleged violations of Rules 1.4 or 8.4(c).
 

 114The committee determined that the baseline sanction for respondent’s misconduct is suspension. In aggravation, the committee observed that respondent has substantial experience in the practice of law (admitted 1987). The committee found no mitigating factors present.
 

 Considering all the circumstances, the committee recommended that respondent be suspended from the practice of law for eighteen months, retroactive to the date of his interim suspension. The committee further recommended that all but six months of the suspension be deferred, conditioned upon respondent’s making restitution to Mr. Polezcek in the sum of $4,000. The committee recommended that this period of suspension run concurrently with any sanction imposed in respondent’s other disciplinary proceeding.
 

 Neither respondent nor the ODC filed an objection to the hearing committee’s report in 08-DB-036.
 

 Disciplinary Board Recommendation
 

 07-DB-07Í & 08-DB-036
 

 After review of the record, the disciplinary board found that the hearing committees’ factual findings are not manifestly erroneous, with two minor exceptions corrected by the board. The board further found that the committees correctly applied the Rules of Professional Conduct.
 

 The board determined that respondent knowingly and intentionally violated duties owed to his clients, the public, and the legal system. He has consistently abused the legal system to exact retribution against individuals who, in his mind, have wronged him. This conduct has caused significant harm to the legal system in the 21st Judicial District in the form of delay and frustration. Numerous public officials and | ^private citizens have been burdened by the litigation initiated by respondent, and the reputations of certain public officials have been tarnished by respondent’s false accusations. Furthermore, Mr. Po-lezcek has not received a refund of the attorney’s fees he paid to respondent. Considering the ABA’s
 
 Standards for Imposing Laruyer Sanctions
 
 and this court’s prior jurisprudence, the baseline sanction for respondent’s misconduct is disbarment.
 

 In aggravation, the board found the following factors: prior disciplinary offenses,
 
 [6]
 
 a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law. The board found no mitigating factors are supported by the record.
 

 In light of the egregious nature of respondent’s conduct and the numerous aggravating factors present, the board recommended respondent be disbarred.
 

 
 *208
 
 Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
 

 DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.
 
 In re: Banks,
 
 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings.
 
 See In re: Caulfield,
 
 96-1401 (La.11/25/96), 683 So.2d 714;
 
 In re: Pardue,
 
 93-2865 (La.3/11/94), 633 So.2d 150.
 

 We find the hearing committee’s factual findings, with the minor modifications made by the disciplinary board, are supported by the voluminous record of this matter. We further find the hearing committees correctly applied the Rules of Professional Conduct.
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 Respondent violated duties owed to his clients, the public, and the legal system. His conduct was both knowing and intentional, and caused actual harm. The applicable baseline sanction in this matter is disbarment.
 
 See In re: Boydell,
 
 00-0086 (La.5/26/00), 760 So.2d 326.
 

 We find there are no mitigating factors present, and numerous aggravating factors, including most notably respondent’s prior disciplinary history of similar misconduct. Respondent also refuses to acknowledge the wrongful nature of his |]7conduct. In light of these circumstances, we conclude there is no reason to deviate downward from the applicable baseline sanction.
 

 Accordingly, we will adopt the disciplinary board’s recommendation and disbar respondent. We will further order respondent to make restitution to Mr. Polezcek as set forth in the report of the hearing committee.
 
 [7]
 

 DECREE
 

 Upon review of the findings and recommendations of the hearing committees and the disciplinary board, and considering the
 
 *209
 
 record, briefs, and oral argument, it is ordered that Arden Wells, Louisiana Bar Roll number 17900, be and he hereby is disbarred, retroactive to November 7, 2007, the date of his interim suspension. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. It is further ordered that respondent shall pay restitution of $4,000 to Timothy Po-lezcek. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 *
 

 Retired Judge Philip C. Ciaccio, assigned as Justice
 
 ad hoc,
 
 sitting for Chief Justice Catherine D. Kimball.
 

 [1]
 

 . The second set of formal charges, 08-DB-036, originally consisted of two counts; however, during the formal hearing, the ODC withdrew Count I. Accordingly, this report does not address Count I, and simply refers to 08-DB-036 as if it consisted of a single count.
 

 [2]
 

 . Indeed, in his hearing testimony respondent admitted to being "a little skeptical” about some of the allegations made by Mr. Chaney. Nevertheless, respondent testified, he filed the affidavit into the public records in order to “preserve" it so that he could "protect” Mr. Chaney, who claimed his life was in danger.
 

 [3]
 

 . In its report, the disciplinary board noted that this appeared to be "a mere oversight” by the committee. The board determined that respondent violated Rule 8.2(a) by filing a federal lawsuit which contained frivolous accusations that had no reasonable basis in fact,
 
 i.e.,
 
 that Mr. Perrilloux framed respondent for extortion.
 

 [4]
 

 . The committee observed that respondent "may have been angry and consumed with the issues concerning his extortion trial," but felt that did not justify his suing Ms. Sandage personally. The committee noted that perhaps respondent was motivated to escalate the litigation in order to obtain a settlement in the underlying litigation, which would benefit Mr. Peoples' friend.
 

 [5]
 

 . The committee commented that respondent’s earned fee "could not exceed $1,000,”
 
 *207
 
 and that he therefore had a duty to refund to Mr. Polezcek at least $4,000.
 

 [6]
 

 . In 1999, respondent was publicly reprimanded by the disciplinary board for filing a frivolous lawsuit in federal court against Judge AJ. Kling, the judge's secretary, and an Assistant Attorney General. Respondent alleged in the suit that his civil rights were violated by the three defendants when they caused a bench warrant to be issued for his arrest after he failed to appear at a sentencing hearing for one of his clients. After the suit was dismissed on motion of the defendants for failure to state a claim upon which relief can be granted, respondent was sanctioned by the federal court under Fed. Rule Civ. P. 11 for filing a frivolous lawsuit.
 

 [7]
 

 . By order dated January 6, 2010, certain motions filed by respondent were referred to the merits of this proceeding. These motions are hereby denied: (1) petition for writ of mandamus directed to the Judiciary Commission; (2) special motion to strike pursuant to La. Code Civ. P. art. 971; (3) petition for writ of mandamus directed to the administrator of the disciplinary board for the names of all persons appointed to serve on hearing committees and the names of the persons who appointed them; and (4) "Petition for Judicial Notice of Truth of Facts Alleged by the Respondent Within the Knowledge of and Not Denied by the Office of the Disciplinary Counsel, the Louisiana Attorney Disciplinary Board, and the Louisiana Supreme Court."